Ruby Jo Griffin sued her employer, Gold Kist, Inc., seeking workers' compensation benefits for an on-the-job injury; Gold Kist terminated her employment while the action was pending, and Griffin amended her complaint to allege wrongful discharge, in violation of Ala. Code 1975, § 25-5-11.1. The trial court severed the two claims, and the retaliatory discharge claim proceeded to trial. At the close of Griffin's evidence, Gold Kist moved for a directed verdict, arguing that it had dismissed Griffin because she had exceeded the medical leave allotted to Gold Kist employees, and not in retaliation for filing her workers' compensation claim. The trial court denied this motion and denied Gold Kist's subsequent directed verdict motion *Page 828 
made at the close of all the evidence. The jury returned a verdict for Griffin, awarding her compensatory damages of $60,000 and punitive damages of $40,000. The court entered a judgment on that verdict and denied Gold Kist's motion for a J.N.O.V. Gold Kist appeals.
Gold Kist argues that Griffin's retaliatory discharge claim is not supported by the evidence and that the trial court therefore erred in denying its directed verdict and J.N.O.V. motions. In reviewing the denial of these motions, we are bound by the same standard as the trial court; that is, we must determine whether the party with the burden of proof produced sufficient evidence to require a jury determination of the issues presented. Continental Eagle Corp. v. Mokrzycki,611 So.2d 313 (Ala. 1992). Additionally, we must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable inferences as the jury would have been free to draw. Continental Eagle Corp., at 316.
The evidence, viewed most favorably to Griffin, indicates the following: On August 30, 1989, while she was working as a machine operator for Gold Kist, she slipped on a wet concrete floor, fell, and injured her right knee. She promptly reported her injury to her supervisors; she finished her shift and then went to a local hospital for treatment. The hospital referred her to Dr. David Lindsey, an orthopedic surgeon, who diagnosed her injury as a dislocated right patella. Dr. Lindsey operated on her knee twice in March 1990, after which she returned to work for Gold Kist as an office helper. Griffin did not return to the plant where she had been working after this time. In mid-September 1990, Griffin underwent a third surgery on her knee.
In November 1990, Gold Kist changed its leave-of-absence policy for employees, to establish that the company would terminate the employment of any worker who did not return to work after a continuous, nine-month medical leave of absence. Gold Kist posted notice of the change in the plant where Griffin had worked; however, she did not return to the plant after her second knee operation. Griffin underwent two more surgeries before her doctors determined that she had reached maximum medical improvement in August 1991 and assigned her a 30% impairment rating to her right knee. On August 7, 1992, Gold Kist sent Griffin a letter of termination, which stated, in pertinent part: "In accordance with company policy, your employment has been terminated effective August 7, 1992 due to the expiration of your medical leave of absence."
At trial, Griffin offered into evidence copies of Gold Kist's personnel policies, which showed that Gold Kist considered medical leave to be discretionary, i.e., "a privilege to be earned," and that any employee seeking medical leave was required to fill out several forms requesting it. Griffin stated that she had never requested medical leave, had never been asked to sign any forms or paperwork regarding medical leave, and had not authorized Gold Kist to do this for her. She further stated that she had never been informed of Gold Kist's new policy of terminating employees who were out of work on a medical leave of absence for more than nine months and was not otherwise warned that her job could be terminated because of excessive leave.
Griffin also produced evidence that Gold Kist had terminated the employment of 22 persons under the leave-of-absence policy, 16 of whom had been on leave for reasons other than an on-the job injury. Of these 16, two were later rehired. The other persons whose employment had been terminated under this policy, including Griffin, were out on medical leave because of on-the-job injuries, and none of these had been rehired.
Gold Kist's human resources manager, E. Hugh Kinkaid, who was in charge of terminating Griffin's employment, conceded that the company required employees to fill out several documents requesting medical leave and to later supplement those documents if leave was extended. He admitted that the company had not required Griffin to do this, but stated that he sent a certified letter to Griffin informing her that she had been placed on medical leave; however, the receipt for the certified letter carried the signature "Amy Elrod"; Griffin testified that she did not receive the letter. Kinkaid also admitted *Page 829 
that, under the leave termination policy, Griffin's employment should have been terminated in January 1992, when she had been away from her job for nine continuous months, instead of eight months later. Kinkaid blamed the delay in termination on a clerical error.
Section 25-5-11.1 provides:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of § 25-5-11."
In Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364,1369 (Ala. 1988), this Court established the following standard of proof necessary in an action filed pursuant to § 25-5-11.1:
 "We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination."
To refute Griffin's retaliatory discharge claims, Gold Kist presented evidence to show that she was terminated pursuant to Gold Kist's nine-month leave of absence termination policy. Griffin then met the shifted burden of proof by showing that Gold Kist had not given her notice of this policy, that Gold Kist did not adhere to the policy by requiring her to file the documents required for medical leave and by keeping records of these documents, that she was never warned that Gold Kist had put her on medical leave or that her employment would be terminated, and that Gold Kist had continued Griffin's employment in spite of its policy, until after she sought workers' compensation benefits. We conclude that this evidence constituted "substantial evidence" warranting a jury's determination on Griffin's retaliatory discharge claim; accordingly, the trial court correctly denied Gold Kist's directed verdict and J.N.O.V. motions.
Gold Kist next argues that the jury's compensatory damages award of $60,000 was not supported by the evidence and that the judgment based on that award should be reversed. We point out that a jury verdict is presumed to be correct and that this presumption is strengthened by the trial court's denial of a new trial. Continental Eagle Corp., at 320. In reviewing the verdict, we indulge every reasonable inference in favor of the verdict and reverse only if the verdict is so contrary to the great weight of the evidence as to be plainly and palpably wrong. Continental Eagle Corp., at 320.
"Although § 25-5-11.1 does not refer to the damages available for violation of its provisions, this Court has construed that section to permit a recovery of damages in accord with the general law of torts." Continental Eagle Corp., 611 So.2d at 320. A plaintiff who proves a claim of retaliatory discharge is entitled to recover for wages that have been lost, and for any impairment of earning capacity due to the wrongful termination, as well as for future lost wages. Continental Eagle Corp., at 320.
At the time of her first knee injury, Griffin was 45 years old and had, until her employment with Gold Kist, worked at minimum-wage jobs to support herself and three children. After her injury, she underwent five knee operations and was unable to lift heavy burdens or to turn or walk well enough to perform her original tasks for Gold Kist; however, Griffin returned to work as an office helper and storeroom clerk for Gold Kist between recovery periods from these surgeries. Since Gold Kist terminated her employment, Griffin has unsuccessfully applied for 20-25 different jobs.
Dr. Jack L. Bentley, a licensed professional counselor, testified at trial that he performed a vocational evaluation on Griffin, taking into account her medical records and the results of functional capacity evaluations and various psychological tests. He opined *Page 830 
that Griffin had sustained a 68% loss of access in the labor market as a result of her injuries, and he stated that her best way of staying employed and in the labor market was to "continue working for the same facility [where she was] employed at before [she was] injured."
When viewed in a light most favorable to Griffin, this evidence could support jury inferences that Gold Kist terminated Griffin's employment although she was still employable in some capacity at Gold Kist, and that other potential employers would be reluctant to hire her because she was fired after suffering an on-the-job injury. Because the jury could infer that Griffin's termination of employment proximately caused a loss in wages and decreased her future earning potential, we conclude that Griffin is entitled to recover lost wages to the extent that she "has not been compensated for this loss pursuant to the Workmen's Compensation Act." Continental Eagle Corp., 611 So.2d at 321. We note that, although Gold Kist paid temporary workers' compensation benefits to Griffin, the full value of lost wages was not decided in the separate workers' compensation case until after this wrongful termination case was decided; thus, any additional recovery that came in the separate workers' compensation case after the trial and judgment in this wrongful termination case are not reviewable on this appeal. ContinentalEagle Corp., at 321.
Gold Kist next argues that there is no "clear and convincing" evidence to show that it acted consciously or deliberately in oppression, wantonness, or malice in terminating Griffin's employment and that the trial court erred in submitting the issue of punitive damages to the jury.
In reviewing punitive damages awards, this Court must presume that the jury awarded the proper amount of punitive damages and may not disturb the verdict on the ground of insufficiency of the evidence unless it appears that the verdict was "plainly and palpably wrong and unjust." Continental Eagle Corp., at 322. Although Gold Kist has attempted to show that the termination of Griffin's employment was based solely on its medical leave policy, the evidence would support the finding that Gold Kist did not apply this policy to Griffin, i.e., that it did not require her to apply for and receive permission to go on formal medical leave and did not terminate her employment after she had been absent from work for nine continuous months; the evidence indicates that Gold Kist terminated her employment only after she had sought workers' compensation benefits beyond the temporary benefits the company had already paid her. From this evidence, the jury could reasonably infer that Gold Kist impermissibly terminated Griffin's employment, and the jury therefore could have properly awarded punitive damages as punishment and for a deterrent. The trial court properly charged the jury as to punitive damages.
The judgment based on the jury verdict is hereby affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and INGRAM, JJ., concur.