812 So.2d 1179 (2001)
AutoZONE, INC.
v.
Michael LEONARD.
Michael Leonard
v.
AutoZone, Inc.
1991293 and 1991301.
Supreme Court of Alabama.
April 27, 2001.
Rehearing Applications Denied July 13, 2001.
*1180 Jonathan S. Harbuck of Kullman Firm, P.C., Birmingham, for appellant/cross appellee AutoZone, Inc.
Nat Bryan, Dennis E. Goldasich, Jr., and Thomas M. Powell of Marsh, Rickard *1181 & Bryan, P.C., Birmingham, for appellee/cross appellant Michael Leonard.
PER CURIAM.
The defendant AutoZone, Inc., appeals from a judgment awarding compensatory and punitive damages in a wrongful-termination case. The plaintiff Michael Leonard cross-appeals from the trial court's order requiring a remittitur of the jury's damages awards. We affirm the judgment of the trial court.

Facts and Procedural History
Michael Leonard was employed as a parts salesman for a store in Leeds operated by AutoZone, Inc. On September 18, 1997, Ron Blankenship, the manager of the Leeds store, asked Leonard to drive from the Leeds store to the AutoZone store in Pell City to pick up an automobile part for a customer. Although the usual route for travel from Leeds to Pell City would have been Interstate Highway 20, at that time I-20 was undergoing construction work. Blankenship testified that because Leonard had lived in Leeds for several years and was familiar with the area, he instructed Leonard to "go the back way" to avoid the construction. Leonard, however, denied that he was ever instructed not to travel on I-20; rather, he testified that his understanding of the conversation was that he was to use those roads that would have allowed him to avoid the construction work on I-20.
When Leonard left the Leeds store, he intended to travel along I-20 for a distance and then to take a couple of back roads to reach Pell City. While traveling along I-20 Leonard encountered a traffic backup that required him to come to a complete stop. As he was stopped on I-20, Leonard's vehicle was hit from behind. Leonard sustained injuries to his right knee as a result of the accident. Leonard stayed at the accident scene for approximately two and one-half hours. When Leonard arrived at the Pell City store, he picked up the automobile part and telephoned Blankenship to notify him of the accident and to tell him that he was going to a hospital to have his knee examined.
Leonard was examined by a doctor, who told him that he could not return to work until September 22, 1997, and gave Leonard a medical excuse. Leonard's wife took the excuse, as well as the automobile part, to the Leeds store the following day. Leonard's wife said that when she delivered the items to the Leeds store Blankenship told her that Leonard would not be allowed to return to work without a medical release, a copy of the accident report, and copies of Leonard's X-rays.
Because Leonard's accident occurred while he was working for AutoZone, AutoZone notified its workers' compensation insurance carrier, Employers Insurance of Wausau ("Wausau"), of the accident. Wausau opened a file, and its investigator interviewed Leonard by telephone. Blankenship informed Wausau's investigator that he had instructed Leonard to "go the back way" to reach the Pell City store. Based on this information, Wausau denied Leonard's workers' compensation claim based on his "deviation from course." When his compensation claim was denied, Leonard retained an attorney; the attorney notified Wausau that Leonard was appealing the denial, and he instructed Wausau to have no further contact with his client Leonard.
Because of his injuries, Leonard was unable to return to work until November 10, 1997. When he returned, AutoZone's file did not contain medical excuses for Leonard's absences for the period September 19-23, 1997, and November 6, 1997. Noting these unexcused absences, Melody Jones, an "AutoZoner Relations specialist"[1] *1182 who oversaw AutoZone's personnel matters, contacted Lawrence Swindall, of AutoZone's Loss Prevention Department, to determine whether Leonard had turned in medical excuses for the dates in question and to obtain a detailed account of Leonard's whereabouts on the date he was injured.
Swindall went to the Leeds store on November 20, 1997, to speak with Leonard. When Swindall told Leonard that he would like to get a statement regarding the events surrounding the accident, Leonard told him that he had retained counsel and that he would not give a statement without having his attorney present. Swindall then took a statement from Blankenship and left the Leeds store.
Leonard was terminated on November 24, 1997, four days after Swindall had attempted to take his statement. The decision to terminate Leonard was made by AutoZoner Relations specialist Melody Jones, AutoZone area advisor Gwinn Jones, and regional vice president Grant McGee. The reasons given for termination were excessive unauthorized absenteeism and failure to cooperate with a loss-prevention investigation.
On December 12, 1997, Leonard sued AutoZone and Blankenship, claiming he had been fired in retaliation for filing a workers' compensation claim, in violation of § 25-5-11.1, Ala.Code 1975. Leonard also alleged that AutoZone and Blankenship had intentionally caused him to suffer emotional distress by terminating his employment. Finally, Leonard alleged that Blankenship had intentionally misrepresented to Wausau the facts concerning his instructions to Leonard on the date of the accident and that Blankenship's misrepresentation had ultimately led to Wausau's denying his claim for workers' compensation benefits.
The trial court entered summary judgments in favor of AutoZone and Blankenship on Leonard's claim alleging intentional infliction of emotional distress (the tort of outrage). After the court had entered those summary judgments, Leonard voluntarily dismissed Blankenship from the action, on June 17, 1999. The case was tried to a jury, which returned a verdict in favor of Leonard and awarded him $200,000 in compensatory damages and $750,000 in punitive damages on the wrongful-termination claim. The court denied AutoZone's motion for a judgment as a matter of law. However, the trial court granted AutoZone's motion for a remittitur. The court denied AutoZone's motion for a new trial, conditioned on Leonard's accepting a remittitur of the compensatory-damages award to $75,000 and a remittitur of the punitive-damages award to $275,000. Leonard accepted those remittiturs, and the court entered a judgment awarding Leonard $75,000 in compensatory damages and $275,000 in punitive damages.
AutoZone argues that, even as remitted, the award of compensatory damages was excessive, and it argues that Leonard failed to present "clear and convincing" evidence entitling him to an award of punitive damages, specifically, it says, because he failed to establish a pattern and practice of retaliation or coercive harassment. On his cross-appeal, Leonard argues that the trial court erred in ordering a remittitur of the jury's awards.

Analysis

I. Compensatory Damages

AutoZone argues that the compensatory-damages award, even after the remittitur, *1183 was excessive. Conversely, Leonard insists that the evidence supports the jury's $200,000 compensatory-damages award. In its order requiring a remittitur of the jury's compensatory-damages award to $75,000, the trial court stated:
"In this trial Plaintiff claimed that he suffered severe mental anguish as a direct result of AutoZone's actions and that his marriage was caused to be terminated in divorce as a direct result of AutoZone's actions.
". . . .
"Although the Court finds that there was substantial evidence from which a jury could award compensatory damages to Mr. Leonard for the actions complained of, the Court finds that the amount of the compensatory award, $200,000.00, was excessive under the circumstances. The evidence in this case established that Mr. Leonard was covered by health insurance on the date of the accident in question, and therefore, his actual out of pocket damages were his lost wages, $3000.00. The evidence further establishes that the financial burden caused by AutoZone's wrongful denial of Plaintiff's [Workers'] Compensation claim and his subsequent termination was only one of many reasons which brought about the dissolution of his marriage. Although it is difficult for the Court to supplant its assessment for that of the jury in determining a reasonable award of compensatory damages for mental anguish and emotional distress associated with the acts complained of in this case, including those acts that were claimed to have contributed to the breakup of a family, it is this Court's opinion that compensatory damages in the sum of $75,000.00 will fairly and adequately compensate Michael Leonard for AutoZone's wrongful conduct."
Alabama law has consistently held that "`jury verdicts carry ... a presumption of correctness, and that ... presumption is strengthened when the trial court denies a motion for new trial.'" Northeast Alabama Reg'l Med. Ctr. v. Owens, 584 So.2d 1360, 1366 (Ala.1991) (citation omitted).
"The appellate courts of this state do not favor setting aside a verdict for damages if doing so can be avoided. The invocation of our statutory authority to determine the proper amount of recovery is dependent upon a clear showing that the jury verdict is the product of bias, passion, prejudice, corruption, or other improper motive."
Id. (citations omitted). A court's review of a jury's compensatory-damages award, on the ground of alleged excessiveness, must focus on the plaintiff and must ask what award the evidence supports, in terms of the damage or harm the plaintiff suffered. Daniels v. East Alabama Paving, Inc., 740 So.2d 1033, 1044 (Ala.1999). In the absence of a flawed verdict, a court has no statutory authority to invade the province of the jury in awarding compensatory damages. Id.
This Court has long held that "`[t]here is no fixed standard for ascertainment of compensatory damages recoverable ... for physical pain and mental suffering' and that `the amount of such [an] award is left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise of that discretion.'" Daniels v. East Alabama Paving, Inc., 740 So.2d at 1044 (quoting Alabama Power Co. v. Mosley, 294 Ala. 394, 401, 318 So.2d 260, 266 (1975)). Although the trial court's order does not state that the jury verdict was the result of juror misconduct, bias, passion, prejudice, or improper motive, the jury's award of compensatory damages evidently shocked the conscience *1184 of the trial court, and the court determined that the reduced award would fairly and adequately compensate Leonard.
AutoZone asserts that Leonard suffered only $3,000 in lost wages, a fact acknowledged by the trial court. Thus, AutoZone contends that judgment awards Leonard $72,000 for mental anguish and emotional distress resulting from the wrongful termination.
"`We recognize that mental anguish and emotional distress are not items for which a precise amount of damages can be assessed; thus, in considering whether a jury verdict for compensatory damages is excessive, we must view the evidence from the plaintiffs perspective and determine what the evidence supports in terms of the plaintiffs suffering.'" Kmart Corp. v. Kyles, 723 So.2d 572, 578 (Ala.1998) (quoting Foster v. Life Ins. Co. of Georgia, 656 So.2d 333, 337 (Ala.1994)).
Most of the evidence regarding the mental anguish Leonard claimed to have suffered related to the collapse of his marriage following his termination. Although Leonard admitted that before he was terminated he and his wife had been having marital difficulties and had sought marriage counseling, he testified that his medical bills, his financial losses, and his temporary inability to contribute to the home increased the stress on the marital relationship and caused the family ultimately to decide it would be best for his wife Laura and their two daughters to move to California, where the three of them could live with the wife's parents.
Based on the testimony regarding Leonard's mental anguish and emotional distress, we affirm the trial court's order requiring a remittitur of the compensatory-damages award to $75,000, and we affirm that portion of its judgment awarding that amount as compensatory damages.

II. Punitive Damages

AutoZone argues that Leonard failed to present evidence indicating that AutoZone had consciously or deliberately engaged in oppression or malice against him. Specifically, AutoZone asserts that Leonard presented no clear and convincing evidence indicating that AutoZone had established a pattern or practice of terminating those employees who sought workers' compensation benefits. Conversely, Leonard argues that the evidence supports the $750,000 punitive-damages award originally rendered by the jury.
In reviewing the punitive-damages award, we "must presume that the jury awarded the proper amount of punitive damages and [we] may not disturb the verdict on the ground of insufficiency of the evidence unless it appears that the verdict was `plainly and palpably wrong and unjust.'" Gold Kist, Inc. v. Griffin, 657 So.2d 826, 830 (Ala.1994) (quoting Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313 (Ala.1992)). We have stated that punitive damages are especially appropriate in retaliatory-discharge cases, based on "the gravity of wrongfully depriving [the employee] of what was [his] livelihood, [and] ... the chilling effect of retaliatory discharges." Lozier Corp. v. Gray, 624 So.2d 1034, 1037 (Ala.1993); see also Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1000 (Ala.Civ.App. 1998).
To be entitled to punitive damages, Leonard was required to present clear and convincing evidence indicating that AutoZone "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to [him]." Heil Co. v. Crowley, 659 So.2d 105, 108 (Ala.1995) (quoting § 6-11-20(a), Ala.Code 1975). "`Clear and convincing evidence' is evidence that, `when weighed against evidence in opposition, *1185 will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.'" Id. (quoting § 6-11-20(b)(4), Ala. Code 1975). "Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt." § 6-11-20(b)(4), Ala.Code 1975.
In its order requiring a remittitur of the punitive damages from $750,000 to $275,000, the trial court stated:
"First, the [trial court] finds that there was clear and convincing evidence that AutoZone consciously or deliberately engaged in oppressive or malicious conduct for which it should be punished. The evidence was sufficiently clear and convincing that the properly instructed jury reasonably determined that AutoZone had no legitimate basis to deny Mr. Leonard his [workers'] [c]ompensation benefits and, when it [became] apparent that Mr. Leonard had no choice but to appeal that denial of benefits, AutoZone terminated him from its employment.
"There was evidence presented by which the jury reasonably could determine that the reasons advanced by AutoZone for Mr. Leonard's termination namely, unexcused absences and failing to cooperate with a loss prevention investigation were merely pretextual. Evidence offered by Mr. Leonard and undoubtedly accepted by the jury showed that all of the days missed from work by Mr. Leonard between the date of his injurious accident and the date of his termination were dates for which Mr. Leonard had a written medical excuse for treatment associated with injuries related to his on-the-job injury. Specifically, Mr. Leonard provided AutoZone with at least five (5) written excuses signed by a physician during this sixty-day period, all of which related to treatment for Mr. Leonard's on-the-job injury. In addition, there was evidence presented at trial from which the jury reasonably could find that Mr. Leonard provided another written emergency room excuse to AutoZone which either was lost from AutoZone's files or was destroyed.
"Mr. Leonard also presented evidence by which the jury reasonably could determine that AutoZone's second asserted reason for termination, that relating to Mr. Leonard's failure to cooperate with a loss-prevention investigation, also was pretextual. There was testimony adduced at trial from which the jury could conclude that this loss-prevention investigation was used by AutoZone to terminate employees if they failed to cooperate with investigators of losses, including those the subject of pending [workers'] [c]ompensation cases. In addition, there was substantial evidence that AutoZone already had made the decision to terminate Mr. Leonard before AutoZone even requested the loss-prevention investigation.
"Finally, before the loss-prevention investigation was acted out, AutoZone had been advised twice by an attorney retained by Mr. Leonard to have no contact with Mr. Leonard regarding this matter, due to the fact that AutoZone had denied his claim for [w]orker's [c]ompensation benefits. This directive from Mr. Leonard's attorney was ignored by AutoZone and when Mr. Leonard requested that his attorney be present during any questioning by the loss-prevention employee, there was evidence from which the jury could conclude AutoZone used Mr. Leonard's request as a basis for terminating Mr. Leonard.

*1186 ". . . .
"In response to hypothetical questions that were premised upon facts which Mr. Leonard proved during the course of the trial, AutoZone managerial employees Melody Jones and Libby Rabun admitted during their testimony that such conduct was oppressive and malicious, and constituted conduct for which an employer should be punished. [The trial court] agrees.
". . . .
"In light of the remittitur of compensatory damages, as set forth above, this Court hereby remits the punitive damages to the sum of [$275,000]. After a consideration of the totality of the facts of this case, coupled with a consideration of the sum of compensatory damages which the Court finds fairly and adequately compensates Mr. Leonard, and given the reprehensibility of AutoZone's conduct, along with the guidelines and guideposts set forth in Green Oil, Hammond, and Gore [these three cases are cited and addressed later in this opinion], the Court determines that this amount of punitive damages is just, warranted, and is not excessive."
This Court has never held that a plaintiff must establish a pattern and practice of retaliatory discharge before he will be entitled to punitive damages in a case based on a retaliatory discharge, and we decline to do so today. This Court has, nevertheless, in upholding punitive-damages awards, found evidence of such a pattern and practice to be persuasive. See Heil Co. v. Crowley, 659 So.2d 105 (Ala. 1995) (upholding a punitive-damages award of $500,000 based on testimony of current and former employees that the defendant employer had engaged in pattern and practice of retaliatory discharge against several employees); Gold Kist, Inc. v. Griffin, 657 So.2d 826 (Ala.1994) (upholding a punitive-damages award of $40,000 where company deviated from usual procedure in firing employee after she had filed workers' compensation claim); Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313 (Ala.1992) (upholding a punitive-damages award of $100,000 where plaintiff presented testimony of five other employees who had also been terminated or treated similarly after filing workers' compensation claims); Gold Kist, Inc. v. Hood, 773 So.2d 1031 (Ala.Civ.App.1999) (upholding a punitive-damages award of $95,000 where plaintiff established that defendant had terminated three other employees after they had filed claims for workers' compensation benefits that resulted in other retaliatory-discharge claims against the defendant); Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996 (Ala.Civ. App.1998) (upholding a punitive-damages award of $200,000 where plaintiff introduced the testimony of three former employees who were terminated after having filed workers' compensation claims); Leak Stop, Inc. v. Keenon, 705 So.2d 479 (Ala. Civ.App.1997) (upholding a punitive-damages award of $79,750 where employees' knowledge of defendant employer's pattern and practice of retaliatory discharge kept other injured employees from filing workers' compensation claims).
At trial, Leonard sought to prove oppressive conduct or malice on the part of AutoZone by establishing that AutoZone had engaged in a pattern or practice of retaliation against its employees who had filed workers' compensation claims. Specifically, Leonard presented evidence indicating that AutoZone had fired another employee, Willie Stallworth, after Stallworth had filed a workers' compensation claim. As with Leonard, the evidence indicated that AutoZone's purported reason for terminating Stallworth was a failure to cooperate with a loss-prevention investigation. *1187 However, AutoZone rebutted that evidence by establishing that Stallworth was, in fact, discharged for taking $150 from AutoZone, and that his failure to cooperate with the loss-prevention investigation stemmed from that event.
In assessing whether Leonard was entitled to punitive damages, we now look to the evidence presented on the question whether AutoZone engaged in oppressive conduct or malice against Leonard. The trial court's order states that two AutoZone managerial employees, presented with hypothetical situations that were factually similar to Leonard's discharge, admitted that such conduct would be oppressive or malicious. Although the record reflects that neither manager admitted any oppressive conduct or malice on the part of AutoZone, both managers testified that employees who are injured on the job should have the ability to seek workers' compensation benefits, and that an employer who retaliates against an employee for filing a claim for such benefits acts with oppression or malice. From this evidence, the jury could have determined that AutoZone engaged in oppressive conduct or malice against Leonard.
AutoZone argues that if this Court does not reverse the punitive-damages award altogether, then it should order a further remittitur of those damages. When considering a defendant's argument that a punitive-damages award is excessive, we consider the "guideposts" established by the United States Supreme Court in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and the factors set forth in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989). See Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 978 (Ala.1998). In Gore the United States Supreme Court provided three "guideposts" for courts to use in reviewing a punitive-damages award: (1) the reprehensibility of the defendant's conduct; (2) the ratio of the punitive-damages award to the compensatory-damages award; and (3) a comparison of the award of punitive damages to the civil or criminal penalties that could be imposed for comparable misconduct. Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1000 (Ala.Civ. App.1998). We have determined that the Supreme Court's requirement that a court consider these new guideposts does not preclude a court from considering the factors set our earlier in Hammond and Green Oil. BMW of North America, Inc. v. Gore, 701 So.2d 507 (Ala.1997).
With regard to the first Gore guidepost reprehensibility of the defendant's conductLeonard presented substantial evidence from which the jury could infer that AutoZone had engaged in oppressive or malicious conduct against Leonard in retaliation for his seeking workers' compensation benefits. The evidence on which the jury based its finding of a wrongful discharge suggests reprehensibility of such a degree as to justify the court's award of punitive damages.
The second guidepost in the Gore analysis is the ratio of the punitive damages awarded to the compensatory damages awarded. Gore, 517 U.S. at 580, 116 S.Ct. 1589. While the guarantees of due process do not require that we apply a mathematical formula to determine whether a punitive-damages award is excessive, the ratio between the punitive damages and the compensatory damages must be reasonable. Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 979 (Ala.1998). In this case, the ratio of the remitted punitive-damages award of $275,000 to the compensatory-damages award of $75,000 is 3.67 to 1. Considering the facts before us, we find this ratio to be reasonable.
*1188 The third Gore guidepost is a consideration of the comparable civil and criminal sanctions available for the defendant's conduct. We cannot consider this guidepost, because Alabama law provides no sanctions, either civil or criminal, for a retaliatory discharge other than the remedy Leonard pursued through his civil action based on § 25-5-11.1, Ala.Code 1975. See Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1001 (Ala.Civ.App. 1998). "`The legislature has proposed no other sanction, civil or criminal, to effectuate the specific purpose of § 25-5-11.1 that employees be able to seek benefits without fear of reprisal. [Motion Indus., Inc. v. Pate, 678 So.2d 724 (Ala.1996)].'" Golson, 725 So.2d at 1001 (quoting Leak Stop, Inc. v. Keenon, supra, 705 So.2d at 485). Accordingly, no meaningful comparison can be made between the punitive-damages award in this case and other sanctions imposed by the Legislature. See Golson, 725 So.2d at 1001.
Based upon the evidence before us, we affirm the trial court's order requiring a remittitur of the punitive-damages award to $275,000, and we affirm that portion of its judgment awarding that amount as punitive damages.

III. Conclusion

The judgment based on the remitted awards$75,000 in compensatory damages and $275,000 in punitive damagesis affirmed.
1991293AFFIRMED.
1991301AFFIRMED.
MOORE, C.J., and JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs in the result.
HOUSTON, J., concurs in part and dissents in part.
SEE and BROWN, JJ., dissent.
HOUSTON, Justice (concurring in part and dissenting in part).
I concur except as to the affirmance of the punitive-damages award. While I would vote to affirm a punitive-damages award, I dissent from the affirmance of the $275,000 award. I would direct a remittitur of an additional $50,000 so that the punitive-damages award would be $225,000. See Prudential Ballard Realty Co. v. Weatherly, 792 So.2d 1045 (Ala.2000) (Houston, J., concurring specially).
BROWN, Justice (dissenting).
I respectfully dissent, because I do not believe the evidence supports even the remitted compensatory-damages and punitive-damages awards.

I. Compensatory Damages

Based on the testimony presented at trial, I believe the greatest amount of compensatory damages that a jury, using its sound discretion, could have awarded Leonard is $30,000.
Although Leonard alleged that the strain caused by the denial of his workers' compensation claim and his eventual termination by AutoZone led to the failure of his marriage, he testified that he and his wife had been experiencing difficulty in their marriage before he was terminated. In fact, the couple had begun marriage counseling before Leonard's termination. Further, the wife's testimony did not discuss the mental anguish or emotional distress Leonard claimed to have suffered as a result of his termination. Finally, the record contains no evidence indicating Leonard suffered any physical symptoms as a result of the mental anguish or emotional distress that he says resulted from his termination.
*1189 Additionally, the evidence indicates that Leonard was unemployed for only six days before he located another job in the same industry. Leonard initially earned less at his new job; however, within one year of his reemployment, he had advanced to a more senior position and was earning more than he had earned while employed by AutoZone.
"We give stricter scrutiny to an award of [damages for] mental anguish where the victim has offered little or no direct evidence concerning the degree of suffering he or she has experienced." Kmart Corp. v. Kyles, 723 So.2d 572, 578 (Ala.1998). Therefore, I would hold that AutoZone must be granted a new trial, unless Leonard accepts a further remittitur of the compensatory-damages award from $75,000 to $30,000.

II. Punitive Damages

Although I agree that Leonard presented clear and convincing evidence entitling him to punitive damages, I cannot vote to affirm a punitive-damages award of $275,000. The ratio of the remitted punitive-damages award$275,000to the compensatory-damages award I would affirm $30,000is 9.17 to 1. I believe this ratio is unreasonable. Therefore, I would require a further remittitur of the punitive-damages award to $90,000, and I would condition the denial of AutoZone's new-trial motion upon Leonard's acceptance of that remittitur.
SEE, J., concurs.
NOTES
[1] "AutoZoner Relations" functions as an employee-relations department for the AutoZone company.