864 So.2d 354 (2002)
MERCY MEDICAL, a corporation
v.
Virginia Lock GRAY.
2010198.
Court of Civil Appeals of Alabama.
August 30, 2002.
Opinion on Return to Remand December 20, 2002.
Certiorari Denied May 16, 2003.
*356 Robert E. Gibney, Mobile, for appellant.
Eaton G. Barnard, Mobile, for appellee.
Alabama Supreme Court 1020573.
CRAWLEY, Judge.
On December 29, 1997, while employed by Mercy Medical as a recreational therapy assistant, Virginia Lock Gray suffered an on-the-job injury for which she was awarded workers' compensation benefits. On April 15, 1998, Gray received a letter from Mercy Medical stating that her time away from work had extended beyond that allowed by the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("the FMLA"), and that she was being terminated "[d]ue to the uncertainty of [her] return date and the importance of patient care coverage." That letter further stated that Gray was eligible to be rehired upon her completing an employment application, if an opening became available. Gray received an employment application, but whether she filed it with Mercy Medical is disputed. However, she did not contact Mercy Medical about employment after receiving the employment application. Gray remained under the care of a physician for her on-the-job injury until July 31, 1998.
On September 6, 1998, Gray filed a claim for unemployment compensation with the Department of Industrial Relations. In *357 that claim she stated that absenteeism was the cause of her discharge. On September 17, 1998, Jolene Nessman, an assistant administrator in Mercy Medical's department of human resources, responded to Gray's claim, stating that "Ms. Gray was out on medical leave and it was unknown for the return date. Her last day worked was 1/23/98 and after exhausting all her leave time under [the] FMLA[,] was taken from payment system on 4/15/98." Gray's unemployment-compensation claim was denied on September 28, 1998; she appealed that decision at an October 15, 1998, hearing conducted by an appeals referee. No representative of Mercy Medical participated in that hearing.[1] In its findings, the referee stated that Mercy Medical had terminated Gray's employment for exhausting her family medical leave. The referee concluded that Gray was entitled to unemployment compensation because she had not voluntarily quit her employment with Mercy Medical.
On March 14, 2000, Gray sued Mercy Medical alleging that it had terminated her employment in retaliation for her filing a workers' compensation claim in violation of § 25-5-11.1, Ala.Code 1975. On June 12, 2001, Gray filed a motion for a judgment on the pleadings. On June 13, 2001, Mercy Medical filed a motion for a judgment as a matter of law or, in the alternative, motion for a summary judgment. The trial court denied Gray's and Mercy Medical's motions on June 13, 2001. On that same day, trial commenced on Gray's retaliatory-discharge claim. At the close of Gray's case, the trial court reserved the presentation of all motions. At the close of all evidence, Mercy Medical filed a motion for a judgment as a matter of law; the trial court denied the motion. On June 14, 2001, the jury returned a verdict in favor of Gray awarding compensatory damages in the amount of $8,840 and punitive damages in the amount of $91,160, for a total amount of $100,000. The trial court entered a judgment on that verdict that same day. On July 12, 2001, Mercy Medical filed a motion for a judgment as a matter of law with alternative motions for a new trial and remittitur relief. The trial court denied those motions on September 7, 2001. On October 18, 2001, Mercy Medical filed a notice of appeal to the Alabama Supreme Court. On November 28, 2001, this case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Mercy Medical argues (1) that the trial court erred by denying its pretrial motion for a judgment as a matter of law or, in the alternative, motion for a summary judgment because, it says, Gray's retaliatory-discharge claim was barred by the doctrine of collateral estoppel; (2) that the trial court erred by denying its motion for a judgment as a matter of law at the close of all evidence because, it says, Gray failed to provide substantial evidence to support her claim and by denying its postjudgment motions because, it says, there was not sufficient evidence to support the jury's verdict; and (3) that the trial court erred by denying its postjudgment motion for a remittitur because, it argues, the jury's punitive-damages award was not supported by substantial or clear and convincing evidence and is constitutionally excessive.

I. Collateral Estoppel

Mercy Medical first argues that Gray's retaliatory-discharge claim is barred by the doctrine of collateral estoppel, relying upon Wal-Mart Stores, Inc. v. *358 Smitherman, 743 So.2d 442 (Ala.1999). In Wal-Mart Stores, our supreme court held that the doctrine of collateral estoppel applied to bar a plaintiff's retaliatory-discharge claim when the basis for the plaintiff's discharge from employment had been determined in an unemployment-compensation hearing before an appeals referee. The supreme court stated:
"In order for the doctrine of collateral estoppel to apply to an issue raised in an administrative proceeding, the following elements must be present:
"`"`(1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.'"'

"Ex parte Smith, 683 So.2d 431, 433 (Ala.1996)(quoting Ex parte Shelby Med. Ctr., Inc., 564 So.2d 63, 68 (Ala.1990)(quoting Pantex Towing Corp. v. Glidewell, 763 F.2d 1241, 1245 (11th Cir.1985)))."
743 So.2d at 445. It is undisputed that there is identity of the parties; thus, we must determine whether the remaining elements exist.
In its brief to this court, Mercy Medical states that because Gray did not raise any issue of retaliatory discharge in the unemployment-compensation hearing she could not assert such a claim in this litigation. Thus, it concedes that the appeals referee did not consider the retaliatory-discharge issue. Further, our review of the appeal referee's order shows that the determinative issue as to whether Gray was due to receive unemployment benefits was whether she was discharged or whether she voluntarily left her employment, a potential disqualification for unemployment benefits under § 25-4-78(2), Ala.Code 1975. The cause for her discharge was not the determinative issue, which distinguishes this case from Wal-Mart Stores. In that case, the issue determined by the appeals referee was whether the plaintiff "`was discharged from [her] most recent bona fide work for misconduct connected with [her] work,'" under § 25-4-78(3)c, Ala. Code 1975. 743 So.2d at 444. Accordingly, because the issue presented to the appeals referee and the issue presented in this case are not identical, we conclude that the doctrine of collateral estoppel does not bar Gray's retaliatory-discharge claim.

II. Substantial Evidence of Retaliatory Discharge

Mercy Medical next argues that Gray failed to present substantial evidence of the elements of a retaliatory-discharge cause of action and that there was not sufficient evidence to support the jury's verdict. It asserts that the trial court therefore erred in denying its motion for a judgment as a matter of law at the close of all evidence and its postjudgment motion for a judgment as a matter of law.
"`The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now referred to as preverdict and postverdict motions for a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court's ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant.'" *359 Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177 (Ala.1998) (quoting Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala.1988)) (citations omitted in Glenlakes Realty).

In Bailey v. R.E. Garrison Trucking Co., 834 So.2d 122 (Ala.Civ.App.2002), this court stated:
"In Alabama, an employee may lawfully be discharged from his employment, with or without cause or justification, for a good reason, a bad reason, or no reason at all. Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala.1992). Section 25-5-11.1, Ala.Code 1975, states an exception to this rule:
"`No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits....'
"In regard to actions brought under § 25-5-11.1, the Alabama Supreme Court has held:
"`[A]n employee may establish a prima facie case of retaliatory discharge by proving that he was "terminated" because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the [employee] must prove that the reason [given by the employer] was not true but a pretext for an otherwise impermissible termination.'

"Twilley v. Daubert Coated Prods., Inc., 536 So.2d 1364, 1369 (Ala.1988)."
834 So.2d at 123-24. The elements establishing a prima facie case of a retaliatory discharge have also been identified as "(1) an employment relationship; (2) an on-thejob injury; (3) notice to the employer of the on-the-job injury; and (4) subsequent termination of employment." Dunn v. Comcast Corp., 781 So.2d 940, 943 (Ala. 2000) (citing Bleier v. Wellington Sears Co., 757 So.2d 1163 (Ala.2000)).
It is undisputed that Gray was employed by Mercy Medical, that she suffered an onthe-job injury, and that Mercy Medical was given notice of that injury. Mercy Medical contends that Gray was not terminated, "in the common and traditional meaning," because she was removed from Mercy Medical's payroll and was eligible for rehire. We are unpersuaded by this argument because the April 15, 1998, letter Mercy Medical sent Gray stated that "[y]ou are eligible for rehire ... if an opening occurs in the system which you feel you are qualified for, you may reapply by completing an application with Mercy Medical for employment consideration." By virtue of that letter, no employment relationship between Mercy Medical and Gray existed because she could not return to her previous position upon being released from her doctor's care for her onthe-job injury. See Twilley v. Daubert Coated Prods., Inc., 536 So.2d 1364, 1368 (Ala.1988) ("We are of the opinion that, because the [retaliatory-discharge] legislation is remedial, the word `termination' in the statute [§ 25-5-11.1] is broad enough to include a `constructive termination.'").
With Gray thus presenting her prima facie case, the burden then shifted to Mercy Medical to present evidence indicating that Gray was fired for a legitimate reason. Bailey, supra. The April 15, 1998, letter stated that Gray's employment was terminated because her absence from work had exceeded that allowed by the FMLA and because her return date was uncertain and patient care was "of utmost importance" to Mercy Medical. Mercy Medical's September 17, 1998, response to Gray's claim for unemployment compensation *360 also stated that she was terminated "after exhausting all her leave time under [the] FMLA." Further testimony from the trial cited by Mercy Medical in support of its argument that it met its burden of showing a legitimate reason for Gray's termination was the testimony of Wendy Lipham, a former director of therapeutic recreation with Mercy Medical. Lipham testified that when Gray left work due to her injury, several temporary employees were used to compensate for Gray's absence. She stated that the remaining staff had to "juggle responsibilities" and that their patients' quality of treatment was compromised because the patient to staff ratio was smaller. As a result of these circumstances, she stated, someone was hired to replace Gray.
In Bleier v. Wellington Sears Co., 757 So.2d at 1171, the supreme court held that "whether an employee is willing and able to return to work is relevant to the defendant's opportunity to establish a defense to a claim alleging retaliatory discharge or to eliminate or reduce the damages recoverable for lost wages." We conclude that Mercy Medical presented sufficient evidence indicating that Gray's employment was terminated for a legitimate reason. However, that defense was subject to being weighed by the jury because at the time of Gray's discharge, Mercy Medical did not know whether she would ultimately be released from her physician's care to return to work. See Bleier, 757 So.2d at 1172 n. 9 ("If an employer discharges an employee who has been injured, and does so at a time when the employer could not know the employee's ultimate status, that fact would weigh against any assertion that the employee's inability to perform was the basis of the decision.").
Mercy Medical contends that because Gray did not cross-examine Wendy Lipham concerning her testimony as to why Gray was replaced and did not present rebuttal testimony at trial, she did not meet her burden of showing that Mercy Medical's stated reason for her termination was pretextual. However, we are mindful that after the trial in this case began, this case was not postured as a summary-judgment proceeding in which the presentation of the employee's prima facie case, the employer's offered legitimate reason for discharge, and the employee's rebuttal proof of pretext can be more structured. Rather, after the presentation of Gray's and Mercy Medical's cases, the trial judge could determine whether, through the evidence presented, Gray had made a sufficient showing for the question to be placed before the jury for consideration.
At trial, Gray offered evidence indicating that she had previously missed more than 12 weeks, as allowed by the FMLA, from September through December 1996 and that her employment with Mercy Medical was not terminated. She also presented evidence to show that her position with Mercy Medical was not filled until July 6, 1998, almost three months after she was terminated. This evidence was sufficient to constitute Gray's showing that Mercy Medical's stated reasons for her termination, that her FMLA leave time had expired and Mercy Medical needed to hire a replacement for patient care, were pretextual. Viewing the evidence in a light most favorable to Gray, we conclude that there was "`sufficient evidence to produce a conflict warranting jury consideration,' "Glenlakes Realty, supra, and that the jury could have reasonably inferred that Mercy Medical had terminated Gray's employment based upon her filing a workers' compensation claim.

III. Punitive Damages

Mercy Medical contends that the jury's punitive-damages award is not supported *361 by the evidence and that the trial court erred by not setting out its reasons for denying Mercy Medical's motion for a remittitur. Our review of the record confirms that the trial court summarily denied Mercy Medical's motion for a remittitur without stating the reasons for its denial. In Guaranty Pest Control, Inc. v. Bush, 851 So.2d 548 (Ala.Civ.App.2002), this court remanded the case because the trial court had failed to set forth its reasons for denying the appellant's motion for a remittitur. In doing so, this court quoted Love v. Johnson, 775 So.2d 127 (Ala.2000), in which the supreme court stated:
"`The defendant correctly argues that the trial judge erred in allowing the motion for a remittitur, a motion challenging the jury's award as excessive, to be denied without providing a statement of the reasons for denial. We remand this case for the trial court to enter an order stating the reasons supporting its denial of the motion for a remittitur. See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). In Hammond, this Court required that a trial court "reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on the grounds of excessiveness of the damages." 493 So.2d at 1379; see also ALFA Mut. Ins. Co. v. Brewton, 554 So.2d 953 (Ala.1989). In Hammond, this Court stated the reason for the requirement:
"`"[T]he trial judge is better positioned to decide whether the verdict is... flawed [as excessive]. He has the advantage of observing all of the parties to the trial  plaintiff and defendant and their respective attorneys, as well as the jury and its reaction to all of the others. There are many facets of a trial that can never be captured in a record, so that the appellate courts are at a special disadvantage when they are called upon to review [a] trial [court's] action in this sensitive area...."
"`493 So.2d at 1378-79.
"`On remand, the trial court is directed to enter an order in compliance with Hammond, and to file a return with this Court within 56 days after the release of this opinion.'
"775 So.2d at 127-28."
851 So.2d at 551. This court further stated:
"The Supreme Court, in so remanding, `express[ed] no view ... on the substantive issue whether the defendant was entitled to a remittitur,' and cautioned that its remand `should not be construed by the trial court or the parties as any expression of [its] views on that issue.' [Love v. Johnson, 775 So.2d] at 128.

"Love was decided by the Alabama Supreme Court in 2000, and we are bound by it. See Ala.Code 1975, § 12-3-16. As the Bushes note, the Alabama Supreme Court, since Love was decided, has altered the substantive standard of appellate review of awards of punitive damages so that no presumption of correctness attaches to such an award. See Acceptance Ins. Co. v. Brown, 832 So.2d 1 (Ala.2001). However, despite the Bushes' arguments to the contrary, we cannot conclude that Acceptance Insurance altered the procedural requirements that apply to judicial consideration of excessiveness challenges to punitive-damages awards. Indeed, Acceptance Insurance itself made clear that the trial court in that case had `stated its reasons for ordering a remittitur of the punitive-damages award, as it [wa]s required to do by Green Oil [Co. v. Hornsby, 539 So.2d 218 (Ala.1989)] ... and Hammond.' 832 So.2d at 23 (emphasis added)."
851 So.2d at 551-52.
Accordingly, as we did in Guaranty Pest Control and as the supreme court did in *362 Love, we remand this cause to the trial court. The trial court is directed to enter an order in compliance with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), and to file a return with this court within 56 days after the release of this opinion. See Love, 775 So.2d at 128. When the trial court files its return, Mercy Medical, if it chooses to do so, will have 14 days in which to file a supplemental brief to argue its positions; Gray will then have 7 days in which to respond, and Mercy Medical will then have 7 days to file a reply brief. See Love, 775 So.2d at 128.
REMANDED WITH DIRECTIONS.
YATES, P.J., and PITTMAN, J., concur.
THOMPSON, J., concurs in the result.

On Return from Remand
CRAWLEY, Judge.
Pursuant to this court's directive, the trial court has returned an order on remand in compliance with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986). We affirm.
On August 31, 2001, the trial court conducted a hearing on Mercy Medical's motion for a judgment notwithstanding the verdict, or, alternatively, a motion for a new trial or a remittitur. The trial court subsequently denied that motion without stating its reasons for denying Mercy Medical's motion for a remittitur. On September 25, 2002, pursuant to this court's directions on remand, the trial court entered an order denying that motion and setting out its findings pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). On October 8, 2002, the trial court's order was filed with this court.
On return from remand, Mercy Medical and Gray have filed briefs arguing their respective positions as they relate to the amount of the jury's punitive-damages award and the trial court's denial of Mercy Medical's motion for a remittitur. Mercy Medical argues that the amount of the jury's punitive-damages award and the trial court's determination that that award was not excessive are not supported by the evidence.
In AutoZone, Inc. v. Leonard, 812 So.2d 1179 (Ala.2001), our supreme court reviewed a punitive-damages award in a similar case involving a claim of retaliatory discharge. The supreme court stated the applicable standard of review as follows:
"In reviewing the punitive-damages award, we `must presume that the jury awarded the proper amount of punitive damages and [we] may not disturb the verdict on the ground of insufficiency of the evidence unless it appears that the verdict was "plainly and palpably wrong and unjust."` Gold Kist, Inc. v. Griffin, 657 So.2d 826, 830 (Ala.1994) (quoting Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313 (Ala.1992)). We have stated that punitive damages are especially appropriate in retaliatory-discharge cases, based on `the gravity of wrongfully depriving [the employee] of what was [his] livelihood, [and] ... the chilling effect of retaliatory discharges.' Lozier Corp. v. Gray, 624 So.2d 1034, 1037 (Ala.1993); see also Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1000 (Ala.Civ.App.1998).
"To be entitled to punitive damages, Leonard was required to present clear and convincing evidence indicating that AutoZone `consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to [him].' Heil Co. v. Crowley, 659 So.2d 105, 108 (Ala.1995)(quoting § 6-11-20(a), Ala. Code 1975). `"Clear and convincing evidence" is evidence that, "when weighed *363 against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion."' Id. (quoting § 6-11-20(b)(4), Ala.Code 1975). `Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.' § 6-11-20(b)(4), Ala.Code 1975.
"....
"When considering a defendant's argument that a punitive-damages award is excessive, we consider the `guideposts' established by the United States Supreme Court in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and the factors set forth in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989)[(relationship to the harm that is likely to occur or that has actually occurred; degree of reprehensibility of the defendant's conduct; profit to the defendant as a result of wrongful conduct; financial position of the defendant; costs of litigation; whether criminal sanctions have been imposed; and whether there have been other civil actions against the same defendant)]. See Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 978 (Ala.1998). In Gore the United States Supreme Court provided three `guideposts' for courts to use in reviewing a punitive-damages award: (1) the reprehensibility of the defendant's conduct; (2) the ratio of the punitive-damages award to the compensatory-damages award; and (3) a comparison of the award of punitive damages to the civil or criminal penalties that could be imposed for comparable misconduct. Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1000 (Ala.Civ.App.1998). We have determined that the Supreme Court's requirement that a court consider these new guideposts does not preclude a court from considering the factors set our earlier in Hammond and Green Oil. BMW of North America, Inc. v. Gore, 701 So.2d 507 (Ala.1997)."
812 So.2d at 1184-87. Further, our review of the trial court's determination that the jury's punitive-damages award was not excessive is de novo. See Orkin Exterminating Co. v. Jeter, 832 So.2d 25, 39 (Ala. 2001) (quoting Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), and citing Acceptance Ins. Co. v. Brown, 832 So.2d 1 (Ala.2001)).
The trial court's order on remand stated, in pertinent part:
"The first issue to be decided by this court is whether or not Gray was entitled to punitive damages....
"This court finds that there was clear and convincing evidence that Mercy Medical consciously or deliberately engaged in oppressive or malicious conduct for which it should be punished. The evidence was sufficiently clear that the jury reasonably determined that Mercy Medical had no legitimate basis for the termination of Gray and did so under the pretext of the expiration of her right to a leave of absence under the Family Medical Leave Act. Then, when confronted with the illegitimate termination, Mercy Medical attempted to proffer another pretextual excuse that there was an urgent need to fill Gray's position. However, the record revealed that Gray's position was not filled until almost three months after she was terminated. Gray also offered evidence that she completed another job application to return to work at Mercy Medical after *364 she was released by her doctor. However, that application was either lost or destroyed by Mercy Medical.
"Based upon the testimony of other former employees of Mercy Medical, who also were terminated after suffering on-the-job injuries, the jury could have reasonably inferred that Mercy Medical had a policy of terminating injured workers. There was, at least, one former employee who, like Gray, had taken time off that extended beyond the twelve week maximum allowed under the Family Medical Leave Act. The personal time off taken by Gray and others did not impose any financial burden on Mercy Medical because it was for personal reasons. However, because both Gray and other former employees were fired twelve weeks after suffering work related injuries, the jury most likely attributed the termination to the fact that the time being taken off by injured workers was actually costing Mercy Medical. Additionally, rather that allowing Gray to draw unemployment benefits after she was terminated, Mercy Medical actually fought the issue, requiring Gray to attend a hearing before an appeals referee for the unemployment office. Finally, despite the fact that the appeals referee ruled that Gray had, in fact, been `terminated,' Joleen Nesman, the assistant administrator for Mercy Medical, continued to dispute the termination at trial and continued to maintain the incredible position that Gray was on leave and had not been terminated.
"Based upon the foregoing, and all the evidence presented at trial, this court finds that there was clear and convincing evidence that Mercy Medical consciously or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to Gray. Therefore, the award of punitive damages was justified.
"The court now addresses the other guideposts required to be considered in determining the amount of punitive damages awarded.
"1. Reprehensibility of the Defendant's conduct

"There was evidence before the jury from which it could have inferred that the management at Mercy Medical acted with knowledge that they were violating the law when they terminated Gray. There was also evidence before the jury to support the inference that Mercy Medical intentionally lied about both the fact that they had fired Gray and the reason for her termination. There was also ample evidence that of a pattern and practice of firing other similarly situated employees. Although it is not necessary that the plaintiff establish a pattern and practice of retaliatory discharge before he may recover, evidence of such pattern and practice is persuasive in upholding punitive damage awards. Id.

"The fact that Gray was fired under the pretext of the expiration of her time allowed under the Family Medical Leave Act, by itself, could be considered reprehensible. There was also testimony from the assistant administrator from which the jury could have determined that Mercy Medical was trying to discourage the filing of worker's compensation claims and such conduct is both oppressive and malicious. The assistant administrator of Mercy Medical, Harry Bishop, admitted that the Family Medical Leave Act had no application to worker's compensation claimants and it was contrary to the law to fire injured workers. This testimony, along with the evidence of Mercy Medical's attempting *365 to claim that Gray was not terminated, and that there was an urgent need to fill her position, all of which was overwhelmingly proven to be false, is supportive of the conclusion that the defendant's conduct was reprehensible.
"2. The ratio of compensatory damages to punitive damages

"I. COMPENSATORY DAMAGES
"The evidence presented at trial was that plaintiff was unable to find work for several months after she was released by her doctor. The credible evidence was that she had $8,840.00 in actual lost income. This court finds that there was substantial evidence of compensatory damages of at least $8,840.00, directly resulting from the wrongful discharge of Gray by Mercy Medical. This court further finds that the jury's award of $8,840.00 in compensatory damages was based upon sound judgment and not the result of any apparent bias, passion, prejudice, improper motive or juror misconduct. Accordingly, the award of compensatory damages in the amount of $8,840.00 is hereby AFFIRMED.

"II. PUNITIVE DAMAGES
"The award of punitive damages in this case was $91,160.00 and the award of compensatory damages was $8,840.00, a ratio of approximately 10.3 to 1. The Alabama Supreme Court has consistently upheld substantial awards of punitive damages when based upon evidence of pattern and practice. See, Heil Co. v. Crowley, 659 So.2d 105 (Ala.1995)(upholding a punitive damages award of $500,000.00); Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313 (Ala.1992)(upholding a punitive damages award of $100,000.00); Gold Kist, Inc. v. Hood, 773 So.2d 1031 (Ala.Civ.App.1999)(upholding a punitive damages award of $95,000.00); Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996 (Ala.Civ.App.1998)(upholding a punitive damages award of $200,000.00). In fact, in Gold Kist, Inc. v. Hood, supra, the Court of Civil Appeals upheld a $95,000.00 punitive damages award with a ratio of 19 to 1, punitive damages to compensatory damages. The fact that there was evidence of a pattern and practice by Mercy Medical of firing injured workers, by itself, supports the jury's award of punitive damages and the ratio of same. This Court finds that the ratio of compensatory damages to punitive damages, given the facts, is both fair and reasonable.
"3. Other possible sanctions

"The Alabama Supreme Court has held that, in a retaliatory discharge case, no consideration can be given to this guidepost, `because Alabama law provides no sanctions, either civil or criminal, for a retaliatory discharge,' other than filing suit under § 25-5-11.1. AutoZone v. Leonard, [812 So.2d at 1188] (citing Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1001 (Ala. Civ.App.1998)). The Alabama Supreme Court has stated that because the legislature has not proposed any sanctions to prevent the termination of injured employees in violation of § 25-5-11.1, `no meaningful comparison can be made' between the punitive damages awarded in a retaliatory discharge case and other sanctions imposed by the legislature because there are no other sanctions imposed by the legislature for retaliatory discharge. Id.

"4. The punitive damages awarded and the actual or likely harm caused

"The Alabama Supreme Court has held that `[p]unitive damages should *366 bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.' Orkin Exterminating Co. v. Jeter, 832 So.2d at 40 (quoting Green Oil Co. [v. Hornsby,] 539 So.2d [at] 223 ([in turn] quoting Aetna Life Ins. Co. v. Lavoie, 505 So.2d 1050, 1062 (Ala.1987))). As a result of Mercy Medical's conduct, Gray had to file for unemployment compensation benefits, which she was initially denied because of Mercy Medical's statement to the unemployment compensation office that Gray was on `leave' of absence, and had not been fired. Therefore, in addition to having fired Gray, Mercy Medical was attempting to `pour salt on the wound' by attempting to prevent her from getting other benefits to which she was entitled. Gray credibly testified that she had to state on employment applications that she had been fired and this caused her embarrassment and humiliation. There was also testimony that Gray's nineteen year old son had to support the family until, at least, November of 1998, when Gray finally started receiving unemployment benefits. Gray also testified that she was `devastated' by the way she was treated by Mercy Medical. There was ample evidence from which the jury could have inferred that Gray did in fact lose wages and suffer mental anguish and emotional distress as a result of her termination and subsequent fight to obtain unemployment benefits. The testimony of former employees who had also been fired under similar circumstances and suffered similarly to Gray supported her testimony as to the harm caused by such treatment. Therefore, this court finds that the actual harm to Gray was grievous and, at least temporarily, devastating and supports the award of punitive damages.
"Equally importantly, if Mercy Medical is not held accountable for its conduct, based upon the evidence which shows pattern and practice, Mercy Medical will not likely be deterred from similar conduct in the future. How many injured workers will not file legitimate claims for fear of termination? How many will be put out on `leave of absence' and lose legal benefits after filing legitimate claims? How many will not pursue valid claims not knowing a legal benefit has been denied if Mercy Medical is not held accountable? To prevent this from occurring, the court further finds that the award of punitive damages to Gray promotes the goal of statute § 25-5-11.1.
"5. Mercy Medical's profit from its misconduct

"Joleen Nesman, Assistant Administrator and Director of Human Resources, testified that worker's compensation claims cause Mercy Medical's insurance premiums for worker's compensation to rise, which ultimately affects the profitability of the institution. She also testified that it could be in the best interest of Mercy Medical to send a message to employees that it is not in their best interest to file worker's compensation claims. This testimony, in conjunction with the fact that other employees testified that they were injured and were terminated under similar circumstances, was sufficient evidence that Mercy Medical was intentionally trying to reduce costs and increase profits at the expense of injured workers.

*367 "6. Mercy Medical's financial position

"The Alabama Supreme Court has held that punitive damages awards should `sting, but should not destroy a defendant.' Orkin Exterminating Co. v. Jeter, 832 So.2d at 42 (citing Green Oil Co. [v. Hornsby], 539 So.2d at 222 (quoting Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125, 127-28 (Ala.1981))).
"On July 12, 2001, Mercy Medical filed a timely motion for judgment notwithstanding the verdict, or alternatively, remittitur relief. Mercy Medical did not request a separate Hammond hearing on the issue of punitive damages. A hearing on defendant's motions was held before this court on August 13, 2001. At the hearing, Mercy Medical did not raise the issue as to its financial position and any potential harm that may be caused by the jury's verdict, nor did Mercy Medical offer any evidence at the hearing. However, the record and testimony revealed that Mercy Medical is a substantial corporation that employs hundreds and operates multiple facilities in both Mobile and Baldwin Counties. Therefore, this court is of the opinion that an award of $91,000.00 in punitive damages would not appear to cause any undue financial impact and/or hardship on Mercy Medical. Furthermore, it is this court's opinion that this verdict can and should send a message that such conduct should not and will not be tolerated. Injured workers should be allowed to seek the benefits to which they are legally entitled without fear of reprisal.
"7. Costs of litigation

"The court must consider whether the punitive damages award is sufficient to encourage other plaintiffs to bring similar actions. National Insurance Association v. Sockwell, 829 So.2d 111 (Ala. 2002), Green Oil, 539 So.2d at 223; see also Life Ins. Co. of Georgia v. Parker, 726 So.2d 619 (Ala.1998). The need to encourage injured workers who are similarly situated to bring rogue employers to trial justifies a significant punitive damages award.
"CONCLUSION
"This court finds that there was clear and convincing evidence of the reprehensibility of the defendant's conduct such to justify an award of the punitive damages. The court further finds that compensatory damages of $8,840.00 was reasonable and that the ratio of 10 to 1, punitive damages to compensatory damages, is warranted and not excessive. This court also finds that a comparison of the award of punitive damages cannot be made to civil or criminal penalties as the cause of action brought by Gray under § 25-5-11.1 is the only potential penalty that can be imposed against the defendant for the conduct exhibited. This court also notes the jury's verdict must stand in order to be an example to Mercy Medical and other employers that such conduct is unacceptable and will not be tolerated. Therefore, this court finds that the judgment of compensatory damages of $8,840.00 and punitive damages of $91,160.00 are reasonable and this court affirms same."
I. The Jury's Award

In our previous opinion remanding this case to the trial court for it to enter an order pursuant to Hammond, we determined that Gray had produced sufficient evidence to support the jury's verdict. Accordingly, we conclude that the jury's verdict was not plainly and palpably wrong and unjust. AutoZone, supra. We will next address whether the amount of the *368 jury's award of punitive damages was excessive.

II. Whether the Jury's Award was Excessive

As our supreme court did in AutoZone, we will now consider whether the jury's punitive-damages award of $91,160 was excessive in light of the three "guideposts" provided in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996): "(1) the reprehensibility of the defendant's conduct; (2) the ratio of the punitive-damages award to the compensatory-damages award; and (3) a comparison of the award of punitive damages to the civil or criminal penalties that could be imposed for comparable misconduct." AutoZone, 812 So.2d at 1187 (citing Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1000 (Ala.Civ.App.1998)).

A. The Reprehensibility of Mercy Medical's Conduct

As previously stated, we conclude that Gray presented substantial evidence to support the jury's verdict, including evidence that Mercy Medical had engaged in oppressive or malicious conduct in retaliation for Gray's seeking workers' compensation benefits. "[P]unitive damages are especially appropriate in retaliatory-discharge cases, based on `the gravity of wrongfully depriving [the employee] of what was [his] livelihood, [and] ... the chilling effect of retaliatory discharges.' AutoZone, 812 So.2d at 1184 (quoting Lozier Corp. v. Gray, 624 So.2d 1034, 1037 (Ala.1993), and citing Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1000 (Ala.Civ.App.1998)). Therefore, we conclude that the reprehensibility of Mercy Medical's actions in wrongfully discharging Gray justifies the award of punitive damages.

B. Ratio of Punitive Damages to Compensatory Damages

The jury awarded Gray $91,160 in punitive damages and $8,840 in compensatory damages, a ratio of 10.31 to 1. "While the guarantees of due process do not require that we apply a mathematical formula to determine whether a punitive-damages award is excessive, the ratio between the punitive damages and the compensatory damages must be reasonable." AutoZone, 812 So.2d at 1187 (citing Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 979 (Ala.1998)). Based upon "`the gravity of wrongfully depriving [Gray] of what was [her] livelihood, [and] ... the chilling effect of retaliatory discharges,'" AutoZone, supra (quoting Lozier Corp. v. Gray, 624 So.2d 1034, 1037 (Ala.1993)), and considering the low amount of compensatory damages awarded to Gray, we conclude that the ratio of punitive damages to compensatory damages in this case is reasonable. See Gold Kist v. Hood, 773 So.2d 1031 (Ala.Civ.App.1999)(upholding punitive-to-compensatory ratio of 19:1); Wal-Mart Stores, Inc. v. Robbins, 719 So.2d 245 (Ala.Civ.App.1998)(same); Life Ins. Co. of Georgia v. Johnson, 701 So.2d 524 (Ala.1997)(upholding ratio of 12:1); Union Security Life Ins. Co. v. Crocker, 709 So.2d 1118 (Ala.1997)(upholding ratio of 68:1).

C. Comparable Civil and Criminal Sanctions

In AutoZone, concerning this guidepost, our supreme court stated:
"We cannot consider this guidepost, because Alabama law provides no sanctions, either civil or criminal, for a retaliatory discharge other than the remedy Leonard pursued through his civil action based on § 25-5-11.1, Ala.Code 1975. See Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1001 (Ala. Civ.App.1998). `"The legislature has *369 proposed no other sanction, civil or criminal, to effectuate the specific purpose of § 25-5-11.1 that employees be able to seek benefits without fear of reprisal. [Motion Indus., Inc. v. Pate, 678 So.2d 724 (Ala.1996)]."' Golson, 725 So.2d at 1001 (quoting Leak Stop, Inc. v. Keenon, [705 So.2d 479, 485 (Ala.Civ.App.1997)]). Accordingly, no meaningful comparison can be made between the punitive-damages award in this case and other sanctions imposed by the Legislature. See Golson, 725 So.2d at 1001."
812 So.2d at 1188. Similarly, we will not consider this guidepost.

III. Conclusion

Based on the foregoing, we affirm the judgment entered on the jury's award of punitive damages.
AFFIRMED.
YATES, P.J., and PITTMAN, J., concur.
NOTES
[1] The Mercy Medical representative arrived late for the hearing and was not allowed to enter the hearing room.