On Application for Rehearing

CRAWLEY, Judge.
The opinion of this court issued on May 28, 2004, is withdrawn, and the following is substituted therefor.
Sarah G. Avery (“the worker”) sued Beverly Health & Rehabilitation Services, Inc. (“the employer”), alleging a retaliatory discharge. The circuit court entered a summary judgment in favor of the employer, and the worker appealed to the Alabama Supreme Court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. We affirm.
The worker is a licensed practical nurse who had, until October 2000, worked for the employer or its predecessor corporation for almost 31 years. On January 23, 2000, the worker leaned over to speak to a patient in the employer’s nursing home. The patient grabbed the worker by the hair, twisted her around, and “slung her down, back and sideways.” The worker testified that initially she had no pain but that a few weeks later she experienced severe headaches and numbness in her hand and arm.
The worker missed no time from work until August 21, 2000, when a physician determined that she had nerve damage in her neck and restricted her to light-duty work for four months. The employer informed the worker that it had no light-duty work for her, so the worker was placed on a 30-day medical leave of absence.[1] Before the expiration of the 30-day period, the worker applied for and was granted a 30-day extension of her leave of absence. The worker was not able to return to work at the end of the second 30-day period, but she did not request another extension of her medical leave of absence until several days after the expiration of the second 30-day period, at which time the employer informed her that, pursuant to its leave-of-absence policy, it considered that she had resigned from her employment.[2]
*706 On October 22, 2000, the worker applied for unemployment-compensation benefits. Following a hearing, the unemployment-compensation examiner for the Department of Industrial Relations (“DIR”) determined that the worker was ineligible for benefits because
“[she] obtained a leave of absence from BEVERLY HEALTH & REHAB SERVICES, [her] last bona fide work. [She was] not able to return to [her] job at the expiration of [her] leave but [she] failed to request an extension. [She] therefore left [her] work voluntarily without good cause connected with work.”
The worker appealed that determination to the DIR Hearings and Appeals Division, which affirmed the DIR examiner’s determination. The decision of the Hearing and Appeals Division states:
“FINDINGS: ....
“The testimony and evidence at the hearing revealed the claimant last worked for the interested employer as a second shift supervisor and had been employed since November 6, 1969. Around August 23, 2000, the claimant presented her employer with a doctor’s statement restricting her work. The claimant, based on restriction, could not perform light-duty work as determined by the employer and was placed on a medical leave of absence for 30 days. She was then instructed to present a doctor’s statement and renew it at the end of each 30-day period if she was not able to work. The leave of absence expired on September 23, 2000. The claimant reported to her place of employment on September 22, 2000, and applied for an extension of a leave of absence for 30 days and it was approved. Her leave of absence expired, based on the extension, on October 23, 2000. The claimant did not report to apply for a second extension of her leave of absence [until] October 27, 2000, and was subsequently determined to have voluntarily resigned her job. The claimant was not able to work at the time the extension of her leave of absence expired on October 23, 2000. The doctor’s statement was initially for a four-month period, but the company policy requires that leaves of absence run 30 days at a time. Extension can be granted for up to six months total time with 30-day extensions in between, based upon a new doctor’s statement.
“CONCLUSIONS: Section 25-4-78(2)[, Ala.Code 1975,] requires a disqualification if an individual voluntarily leaves her most recent bona fide work without good cause connected with such work.’ Good cause’ is defined as substantial reason; just ground for such action; adequate excuse that will bear the test of reason; and always the element of good faith. The claimant left *707 work based upon a sickness and/or disability. The claimant was granted a medical leave of absence. She was not able to return to work at the expiration of the leave of absence after a 30-day extension. The claimant did not reapply for another extension when the first one expired. Therefore, the claimant failed to meet the conditions necessary to avoid a disqualification under ... section [25-4-78(2)].”
On October 25, 2001, the worker filed a retaliatory-discharge complaint. On January 22, 2002, the employer answered the complaint, alleging, as its third affirmative defense, that the worker was “estopped from asserting the claims set forth in her complaint.” The case was set for trial on June 23, 2003.
On April 8, 2003, the employer moved the trial court to allow it to amend its answer “to more adequately plead the affirmative defense of collateral estoppel.” On the same day, the employer moved for a summary judgment, maintaining, as its sole basis for granting the motion, that the worker was collaterally estopped from alleging that she had been terminated from her employment in retaliation for bringing a workers’ compensation claim because, it argued, DIR had previously determined that the worker had “voluntarily left work without good cause connected with work.”
The worker moved to strike the employer’s amended answer asserting the affirmative defense of collateral estoppel offered as a basis for the employer’s motion for a summary judgment. She contended that the “estoppel” defense asserted in the employer’s answer was separate and distinct from the “collateral estoppel” defense relied upon in the employer’s motion for a summary judgment. The trial court entered a summary judgment for the employer without ruling on either the employer’s motion to amend its answer or the worker’s motion to strike the proposed amendment.
I.
The worker contends that the trial court erred by failing to grant her motion to strike the employer’s amended answer asserting the affirmative defense of collateral estoppel.
We need not determine whether the “es-toppel” defense initially pleaded in the employer’s answer was sufficient to raise the defense of collateral estoppel. Rule 15(a), Ala. R. Civ. P., states, in pertinent part:
“(a) Amendments. Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires.”
Because the employer sought to amend its answer more than 42 days before the initial trial setting, it was not required to obtain leave of the trial court. Our supreme court has held that a defendant’s failure to plead an affirmative defense in its answer does not prevent it from raising the defense in its motion for a summary judgment when the defendant amends its answer to include the affirmative defense before the trial court rules on the summary-judgment motion and the party opposing the amendment fails to show that the amendment would cause actual prejudice or undue delay. See Alexander, Corder, Plunk, Baker & Shelly, P.C. v. Jackson, 811 So.2d 506 (Ala.2001); Piersol v. ITT Phillips Drill Div., Inc., 445 So.2d 559 (Ala.1984). On appeal, the worker argues only that the employer waived the collateral-estoppel defense by failing to plead it in the answer. The worker does *708 not argue that the amendment of the employer’s answer caused her actual prejudice or undue delay. Therefore, we conclude that the collateral-estoppel defense was properly before the trial court at the time the court entered the summary judgment.
II.
Citing Mercy Medical v. Gray, 864 So.2d 354, 358 (Ala.Civ.App.2002), the worker argues that she was not collaterally estopped by the adverse decision on her unemployment-compensation claim from relitigating the issue of whether, and why, the employer terminated her from her employment.
In Mercy Medical v. Gray, Gray was terminated from her employment after she was injured on the job, received workers’ compensation benefits, and exhausted the leave time allowed by the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. Mercy Medical wrote Gray a letter explaining that “she was being terminated ‘[d]ue to the uncertainty of [her] return date and the importance of patient care coverage.’ ” 864 So.2d at 356. Gray filed a claim for unemployment compensation and was ultimately awarded benefits when a DIR appeals referee concluded that she had not voluntarily quit her employment but that she had been terminated.[3]
“In its findings, the [DIR] referee stated that Mercy Medical had terminated Gray’s employment for exhausting her family medical leave. The referee concluded that Gray was entitled to unemployment compensation because she had not voluntarily quit her employment with Mercy Medical.”
Mercy Medical v. Gray, 864 So.2d at 357.
Gray later sued Mercy Medical, alleging a retaliatory discharge. A jury rendered a verdict in her favor, and Mercy Medical appealed, arguing that Gray’s retaliatory-discharge claim was barred by the doctrine of collateral estoppel. This court rejected Mercy Medical’s argument and affirmed the judgment entered on the jury verdict, holding that the doctrine of collateral es-toppel did not apply because the issue presented in the administrative proceeding and necessary to the administrative decision (Did Gray voluntarily quit or was she terminated from her employment?) was not the same as the issue presented in the retaliatory-discharge action (Why was Gray terminated from her employment?).
This court, quoting Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442 (Ala. *709 1999), outlined five elements that are required in order for the doctrine of collateral estoppel to apply to preclude a court’s considering an issue previously raised in an administrative proceeding:
“ ‘ “ ‘ “(1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be es-topped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.” ’ ”
“ ‘Ex parte Smith, 683 So.2d 431, 433 (Ala.1996) (quoting Ex parte Shelby Med. Ctr., Inc., 564 So.2d 63, 68 (Ala.1990)(quoting Pantex Towing Corp. v. Glidewell, 763 F.2d 1241, 1245 (11th Cir.1985))).’
"[Wal-Mart Stores, Inc. v. Smitherman ], 743 So.2d [442,] 445 [(Ala.1999)].”
Mercy Medical v. Gray, 864 So.2d at 358.
In Mercy Medical v. Gray, the administrative agency made a finding with regard to the reason Gray’s employment was terminated: that she had exhausted her family medical leave. That finding, however, was not “necessary to the administrative decision” and, therefore, did not estop Gray from attempting to prove, in her retaliatory-discharge action, that she had been terminated for a different reason. On the other hand, the administrative finding in the present case — that the worker had voluntarily quit her employment — was necessary to the administrative decision. That circumstance distinguishes this case from Mercy Medical v. Gray. We conclude that the decision in Wal-Mart Stores, Inc. v. Smitherman, supra, is applicable here.
In Wal-Mart Stores, Inc. v. Smitherman, Smitherman was terminated from her employment after reporting a shoulder injury at work. Her claim for unemployment-compensation benefits was denied based on DIR’s finding that she had been discharged for making a derogatory and profane remark about a supervisor, an action that, DIR determined, constituted “ ‘misconduct committed in connection with [her] work.’ ” 743 So.2d at 444. Pursuant to § 25-4-78(3), AIa.Code 1975, discharge for misconduct is a circumstance that disqualifies an applicant from receiving unemployment benefits.
When Smitherman later filed a retaliatory-discharge action against Wal-Mart, Wal-Mart moved for a summary judgment, contending that the doctrine of collateral estoppel barred Smitherman from relitigating the reason for her discharge. The trial court denied Wal-Mart’s motion, and Wal-Mart petitioned for permission to appeal, pursuant to Rule 5, Ala. R.App. P., from the interlocutory order. The Alabama Supreme Court granted the petition and reversed the trial court’s order denying Wal-Mart’s motion for a summary judgment.
The supreme court held that Wal-Mart had satisfied all five elements of the collateral-estoppel test and was therefore entitled to a judgment as a matter of law. With regard to the “identity of issues” component of the test, the court stated:
“[T]he issue whether Wal-Mart discharged Smitherman for making a profane and derogatory remark about a superior is present in both the unemployment-compensation proceeding and the retaliatory-discharge action. Therefore, there is an identity as to at least one of the issues in the two proceedings — that issue being the reason for Smitherman’s discharge.”
Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d at 446.
*710 In the present case, the worker attempts to distinguish Wal-Mart Stores, Inc. v. Smitherman and to bring herself within the rule of Mercy Medical v. Gray on the basis that the reason for her termination was not at issue in the unemployment-compensation proceeding. That argument begs the question because it “assumes as a premise for [the] argument the very conclusion [the worker] intends to prove,” see In re Anonymous, 733 So.2d 429, 431 (Ala.Civ.App.1999), i.e., that she was terminated. The crucial question in the unemployment-compensation proceeding here, as in Mercy Medical v. Gray, is whether the worker has been terminated or whether she has voluntarily quit. When a worker fails to adhere to her employer’s established leave-of-absence policy, she is ineligible for unemployment-compensation benefits. Henderson v. Allen, 627 So.2d 418 (Ala.Civ.App.1993). A worker’s failure to request an extension of a leave of absence amounts to the worker’s voluntarily quitting her job and disqualifies her from receiving unemployment compensation. See Department of Indus. Relations v. McLeod, 55 Ala.App. 152, 314 So.2d 72 (Civ.1975).
In Mercy Medical v. Gray, our supreme court explained:
“[T]he appeal referee’s order shows that the determinative issue as to whether Gray was due to receive unemployment benefits was whether she was discharged or whether she voluntarily left her employment, a potential disqualification for unemployment benefits under § 25-4-78(2), Ala.Code 1975. The cause for her discharge was not the determinative issue, which distinguishes this case from Wal-Mart Stores [v. Smitherman, 743 So.2d 442 (Ala.1999)].”
Mercy Medical v. Gray, 864 So.2d at 358. See generally Annotation, Unemployment Compensation: Eligibility Where Claimant Leaves Employment Under Circumstances Interpreted as a Firing by the Claimant But as a Voluntary Quit by the Employer, 80 A.L.R.4th 7 (1990).
Proving that her employment had been “terminated” was an indispensable element of the worker’s retaliatory-discharge action. Section 25-5-11.1, Ala.Code 1975, provides:
“No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits.... ”
(Emphasis added.) A worker establishes a prima facie case of retaliatory discharge by proving that her employment was “ ‘terminated ’ because [s]he sought to recover worker’s compensation benefits.... ” Twilley v. Daubert Coated Prods., Inc., 536 So.2d 1364, 1369 (Ala.1988)(emphasis added).
“The elements establishing a prima facie case of a retaliatory discharge have ... been identified as ‘(1) an employment relationship; (2) an on-the-job injury; (3) notice to the employer of the on-the-job injury; and (4) subsequent termination of employment.’ Dunn v. Comcast Corp., 781 So.2d 940, 943 (Ala.2000)(citing Bleier v. Wellington Sears Co., 757 So.2d 1163 (Ala.2000)).”
Mercy Medical v. Gray, 864 So.2d at 359 (emphasis added).
The worker is collaterally estopped from making the assertion, in her retaliatory-discharge action, that she was “terminated” from her employment because when DIR determined that the worker had voluntarily quit her employment, it necessarily determined that she had not been “terminated.”
“[I]n order for the doctrine of collateral estoppel to apply, it is not necessary *711 that the administrative proceeding and the retaliatory-discharge action be identical as to all issues. Instead, it is the issue to be estopped that must be the same in the administrative proceeding and the retaliatory-discharge action.”
Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d at 446-47. In the present case, the issue to be estopped, which was the same in both the administrative proceeding and the circuit court proceeding, was whether the worker voluntarily left work or was involuntarily terminated. In the unemployment-compensation proceeding, the parties were identical, they had an adequate opportunity to and actually did litigate this issue, the DIR examiner made findings on the issue, and the resolution of the issue was necessary to the administrative decision. Thus, all the requirements for applying the doctrine of collateral es-toppel to the worker’s retaliatory-discharge action were satisfied. The decision in the unemployment-compensation proceeding that the worker voluntarily left work estopped the worker from asserting, in the retaliatory-discharge action, that her employment was terminated.
The judgment of the circuit court is affirmed.
OPINION OF MAY 28, 2004, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.

. During this time, the worker's medical expenses were paid by the employer's health insurance. The employer’s workers’ compensation carrier denied liability because, it determined, the worker’s neck problems stemmed from a preexisting, non-work-related injury the worker suffered in 1998.

. The-worker testified that, when she returned on October 27 to request a second extension of her leave of absence, the employer's director of nursing, Denise Tipton, told her that she did not have to file for an extension because she was “not on a FMLA [Family and Medical Leave Act] leave of absence.”
*706 Even accepting the worker’s testimony as true, it does not affect the result in this case. The company's written leave-of-absence policy clearly required the worker to apply for an extension of any 30-day leave of absence before the expiration of the 30-day period. The worker's request was several days late and, therefore, untimely. Moreover, the worker could not have relied on Tipton’s statement in failing to request a timely extension. See Department of Indus. Relations v. McLeod 55 Ala.App. 152, 156, 314 So.2d 72, 76 (Civ.App.1975) (stating that, if a claimant’s employment is terminated "at the end of the thirty day period for failure of the claimant to report for work should he be able to work or for failure to request a [timely] extension of his leave of absence should he not be able to work," the claimant is "disqualified under the terms of [Title 26,] Section 214[, Ala.Code 1940 (Recomp.1958), the predecessor to § 25-4-78, Ala.Code 1975, which lists the circumstances under which a worker may be disqualified from receiving unemployment benefits]”).

. If a worker voluntarily quits work, then he or she is disqualified from receiving unemployment benefits pursuant to § 25-4-78(2), Ala.Code 1975. That section provides, in pertinent part:
“An individual shall be disqualified for total ór partial unemployment:
[[Image here]]
"(2) Voluntarily Quitting Work. If he has left his most recent bona fide work voluntarily without good cause connected with such work.
"a.l. However, he shall not be disqualified if he was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do, and returned to that employer and offered himself for work as soon as he was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability and:
“(i) The individual fails to comply with same as soon as it is reasonably practicable so to do; or
"(ii) Upon the expiration of a leave of absence shall fail to return to said employer and offer himself for work, if he shall then be able to work, or if he is not then able to work, he fails to so notify his employer of that fact and request an extension of his said leave of absence as soon as it is reasonably practicable so to do.”
(Emphasis added.)